No. 47,996

GARY LEWIS GOLDSBERRY, *Appellee, v.* GARY LEWIS, *Appellant.*

(551 P. 2d 862)

Opinion filed June 12, 1976.

*Bruce E. Borders,* of Borders and Borders, of Independence, argued the cause and was on the brief for the appellant.

*Jack L. Lively,* of Hall, Levy and Lively, of Coffeyville, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: Despite a maze of procedural complexities which tend to obscure it, we think the dispositive issue in this case is whether default judgment was properly rendered in favor of plaintiff at a time when the defendant had pending an undetermined motion questioning the validity of service and the court's jurisdiction over his person. We hold that it was not.

The action arises out of an altercation which occurred near Coffeyville, Kansas, in December, 1972. The original petition alleged that the defendant, Gary Lewis, maliciously shot the plaintiff, Gary Lewis Goldsberry, causing serious permanent injuries. The petition sought $592,600 in compensatory damages.

Also as a result of the altercation, felony charges were filed against the defendant in the city court of Independence. Defendant, a resident of Broken Arrow, Oklahoma, made bond for his ap-

pearance on those charges. On February 6, 1973, while he was in Montgomery county, Kansas, for the sole purpose of attending his preliminary hearing, he was served with a summons and the original petition in this action.

On February 23, 1973, the defendant filed a motion to quash service:

"Comes now the defendant, Gary Lewis, appearing specially, and moves the Court to quash the service of summons, same not being served, issued and returned according to the Statutes of the State of Kansas."

The motion was signed by one Charles Pope, an Oklahoma attorney.

On February 26, 1973, plaintiff filed a "motion to quash" defendant's "motion to quash," on the ground that defendant's attorney did not have a Kansas attorney associated with him as required by K. S. A. 7-104 and Supreme Court Rule No. 109.

Neither motion was ever ruled on by the trial court.

In October, 1973, plaintiff's original counsel withdrew. In January, 1974, present counsel entered the case and filed an amended petition, adding a claim for $50,000 punitive damages to the original claim for $592,600 compensatory damages. The amended petition was served by mailing a copy to defendant and to his Oklahoma attorney.

On July 2, 1974, plaintiff's counsel wrote the following letter to the clerk of the district court:

"Please set the above matter for trial on July 19, 1974, at 9:00 a. m. or as soon thereafter as the matter may be heard. We are sending copies of this notice to attorneys of record for the defendant."

Copies were sent to defendant's Oklahoma counsel, and also to his present Kansas counsel. The latter promptly wrote the clerk pointing out that he had never appeared in the case to that time, and was not counsel of record.

No notice of a trial setting was ever given by the court or clerk, and no notice of intent to enter a default judgment (other than the foregoing letter to the clerk) was ever served on the defendant or his attorney. Nevertheless, on July 19 (the journal entry recites July 22), plaintiff introduced evidence and the court entered a default judgment in his favor for the $592,600 compensatory and $50,000 punitive damages prayed for. The journal entry was filed July 23, 1974, without submission to defendant or his counsel. Neither were they notified of the entry of judgment as required by Supreme Court Rule No. 115.

On November 7, 1974, defendant filed a "renewed" motion to

quash service. At the hearing on the motion on November 22, the trial court and both parties recognized as applicable certain basic principles firmly established in our decisions: A nonresident of this state who is here solely to appear in a criminal action against him is immune from service of process in a civil action; Such immunity has its origin in public policy and the common law, and not in any statutory provision; Service on a person who is immune is not void, but is irregular only; The immunity is a privilege which may be waived if not claimed, and failure to assert the privilege until after judgment constitutes a waiver. See *Baker v. Erbert,* 199 Kan. 59, 427 P. 2d 461; *Phoenix Joint Stock Land Bank v. Eells,* 158 Kan. 530, 148 P. 2d 732; *Eaton v. Eaton,* 120 Kan. 477, 243 Pac. 1040; and cases cited therein.

The trial court found that the original motion to quash service was inadequate to raise the privilege because it spoke only of non-compliance with the "Statutes" of this state, whereas the deficiency in service lay in noncompliance with the common law of this state. Since the latter ground wasn't specifically raised until after the default judgment was entered, the court found that the privilege wasn't asserted in a timely fashion.

The court further found that defendant's Oklahoma counsel was not entitled to notice of the default judgment because he had appeared specially for the sole purpose of challenging service. The renewed motion was therefore overruled.

After this ruling defendant moved to set aside that portion of the judgment awarding $50,000 in punitive damages on the ground that the amended petition, asserting that claim for the first time, had not been served on him. The argument was that if the appearance of Oklahoma counsel was insufficient to entitle him to notice, it was insufficient to make mere mailing of the new demand to him valid service. That is to say, if labelling his appearance a "special appearance" constituted a "failure to appear," then under K. S. A. 60-205 (*a*) any new claim against defendant had to be served in the same manner as a summons. This motion was also overruled, on the basis that defendant was "represented" by the Oklahoma attorney so as to make mailing good service under K. S. A. 60-205 (*b*). For the purposes of this motion the trial court recognized that the distinction between special and general appearances has been abolished by K. S. A. 1975 Supp. 60-212 (*b*).

The defendant has appealed from the overruling of both motions.

As indicated at the outset, we think the result here is controlled by whether the case was properly one for default judgment.

We would suppose it to be elementary that before a default judgment may be rendered there must be a default. Here defendant timely served and filed a motion to quash service. We take this to be a motion under 60-212 (*b*). It raises the defense of "lack of jurisdiction over the person," under (2), the defense of "insufficiency of process" under (4), and the defense of "insufficiency of service of process" under (5). Under 60-212 (*a*), the service of such a motion "alters" the time otherwise fixed for responding to the petition as follows:

". . . (1) If the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within ten (10) days after notice of the court's action . . ."

In this case the trial court neither denied the motion nor postponed its disposition until trial, and obviously never gave defendant "notice of its action." The result is that defendant's ten days to answer never started to run. The further result must be that his answer day never arrived and he was never in default.

A few further comments are in order. Plaintiff points out that in March of 1974, when defendant was in the Montgomery district court for sentencing on the criminal case, the status of this civil case was discussed at some length by court and counsel. All concerned agreed at that time that if it were properly worded defendant's motion to quash would be good. Plaintiff now argues that defendant, knowing of the deficiency in his motion, should have amended at that time, rather than after the judgment was entered.

There is much force in the argument. We cannot condone conduct on the part of defendant which can only be characterized as dilatory; his motion could have been overruled at any time. The fact remains, however, that it was *not* overruled. Moreover, the conference also demonstrates that the court and plaintiff's counsel were fully aware of the real thrust of defendant's motion, and of the fact that it lay in the court's file undecided. Plaintiff could have brought the matter to a head by noticing the motion for hearing, having it overruled, and thereby starting the answer time running. Had it been, for example, a meritless motion to dismiss for failure to state a cause of action, that is surely what plaintiff would have done.

An alternative for plaintiff would have been to notice for hearing his motion to "quash" defendant's motion because filed by Oklahoma counsel. The failure to have Kansas counsel did not make

defendant's motion a nullity, but did subject it to being stricken if Kansas counsel did not appear in due course. See *Thornburg v. McClelland*, 186 Kan. 20, 348 P. 2d 617.

Plaintiff also complains, with some justification, that defendant's Oklahoma counsel admittedly received a copy of the July 2, 1974, letter to the clerk, yet did nothing to forestall the entry of default judgment. The trouble with that argument lies in the ambiguity of the letter itself. The letter merely asks the clerk to set the case for trial; it says nothing about taking a default judgment, and therefore cannot be construed as the notice required by K. S. A. 1975 Supp. 60-255 (*a*). Neither can it be construed as a trial setting; by its terms it requests the *clerk* to set the case for trial. If the case were to be considered a "contested" case, subject to trial rather than default judgment, a local rule (No. 11) would require the clerk to give "at least 15 days advance notice" of the trial setting. No such notice was given. (The difficulty arose, of course, because until the answer day came and went there was no way of telling whether the case would be a "contested" or a default matter.) Granting that Oklahoma counsel demonstrated a remarkable lack of curiosity, we think even Kansas counsel who received plaintiff's letter might well have sat back and waited for further word from the court or clerk. This would be particularly true where counsel knew that by virtue of his undetermined motion the case was not at issue and his answer day had not yet passed.

The net result is that the "default" judgment was entered at a time when there was no default. We think defendant's postjudgment motions, liberally construed, fairly raised the propriety of the entire judgment. Accordingly it must be and is hereby vacated. The case is remanded to the trial court to rule on the prejudgment motions (as they may be amended) and to proceed with the action from that stage.

APPROVED BY THE COURT